# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARY CHAMBERS, individually, and on behalf of all others similarly situated, | **Civil No.:**  15:cv-2013 |
| Plaintiff, | **CLASS ACTION  COMPLAINT** |
| v. | |
| NASA FEDERAL CREDIT UNION, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

## COMPLAINT

Plaintiff Mary Chambers ("Plaintiff"), by her attorneys, hereby brings this class and representative action against NASA Federal Credit Union ("NFCU" or "Defendant").  All allegations herein are based upon information and belief except those allegations which pertain to Plaintiff or her counsel, which are based on personal knowledge.  Plaintiff's information and belief are based upon, inter alia, Plaintiff's own investigation and the investigation conducted by Plaintiff's attorneys.  Each allegation either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THE ACTION

1.      This is a class and representative action brought by Plaintiff to assert claims in her own right, and in her capacity as the class representative of all others similarly situated.  This class

CLASS ACTION: COMPLAINT

action seeks monetary damages, restitution, punitive damages, and injunctive relief against

Defendant NFCU arising from NFCU's breach of its contracts with consumers in its

implementation of an overdraft fee program.  Specifically, Plaintiff asserts that NFCU charged

overdraft fees for transactions for which there was money in the checking account to cover the

transactions, thereby breaching the express terms of its consumer contract.   Plaintiff also alleges

that because it provided inaccurate and misleading overdraft information to its customers, under

the Electronic Funds Transfer Act, 12 C.F.R. § 1005, NFCU was not authorized to assess overdraft

fees to consumers for debit card and non-recurring debit card charges.  However, NFCU did

charge its customers overdraft fees for ATM and debit card charges.

## PARTIES

2.      Plaintiff is a resident of Washington D.C. and was as a member of NFCU at all

times relevant to the class action allegations.

3.      Based on information and belief, Defendant NFCU is a state chartered credit union

with its headquarters located in Washington D.C.  NFCU also has multiple branches in Maryland,

and has a Maryland choice of law provision in its Account Agreement.

4.      Whenever in the complaint reference is made to any act, deed, or conduct of a

defendant corporation, the allegation means the defendant corporation engaged in the act, deed, or

conduct by or through one or more of its officers, directors, agents, employees, or representatives

who was actively engaged in the management, direction, control, or transaction of the defendant

corporation's ordinary business and affairs.  (Doe Defendants are collectively referred to herein

and are included in the term "Defendant.")

5.      As to the conduct alleged herein each act was authorized ratified or directed by

Defendant's officers, directors, or managing agents.

CLASS ACTION: COMPLAINT

## VENUE AND JURISDICTION

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Jurisdiction is also proper pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d) because:

1) the claims of plaintiffs aggregated together exceed $5,000,000, and 2) some putative class

members are residents of different states than the Defendant.  Venue is proper pursuant to 28

U.S.C. § 1391(b)(1) because Defendant is a resident of and doing business in Washington D.C.,

which is in this District.

## FACTUAL ALLEGATIONS

**A.     NFCU's Unlawful Overdraft Program**

7.     NFCU is a Washington D.C. based credit union with approximately $1.5 billion in

assets that provides banking services to over 100,000 members through 12 branches in Washington

D.C., Maryland, and Virginia.   One of the services offered by NFCU to consumer banking

customers is a checking account.  One of the benefits NFCU offers with a checking account is a

debit card that can be used for a variety of transactions including buying goods and services, as

well as the ability to write checks, withdraw from ATM machines, schedule ACH (Automated

Clearing House transactions) such as certain recurring payments, and other type of transaction

items that debit from the checking account.  In connection with processing debit items (including

debit card, ATM, check, ACH and other types of transactions), NFCU assesses overdraft fees to its

customers when it determines that the customer account is overdrawn.

8.     Credit Unions, like banks, have increasingly turned to overdraft fees as a highly

lucrative profit center.  An FDIC report estimated that overdraft fees represent 74% of the total

services charges that are imposed on deposit accounts in the United States.  According to the June

CLASS ACTION: COMPLAINT

11, 2013 report entitled CFPB Study of Overdraft Programs[1], credit unions generated $7.4 billion in overdraft fees in 2012 (p. 14).

9.      The high cost of an overdraft fee is usually unfairly punitive. In a 2012 study, more than 90% of customers who were assessed overdraft fees overdrew their account by mistake. (May 2012 Pew Charitable Trust report entitled "Overdraft America: Confusion and Concerns about Bank Practices", at p. 4.)   More than 60% of the transactions that resulted in a large overdraft fee were for less than $50. (June 2014 Pew Charitable Trust report entitled "Overdrawn", at p.8).  More than 50% of those who were assessed overdraft fees do not recall opting into an overdraft program (*id.*, at p. 5), and more than two-thirds of customers would have preferred the financial institution decline their transaction rather than paying the transaction into overdraft and charging a very large fee (*id.*, at p. 10).

10.      Unfortunately, the customers who are assessed these fees are the most vulnerable customers.  Younger, lower-income, and nonwhite account holders are among those who were more likely to be assessed overdraft fees. (*Id.*, at p. 1.)  A 25 year old is 133% more likely to pay an overdraft penalty fee than a 65 year old. (*Id.*, at p. 3.)  More than 50% of the customers assessed overdraft fees earned under $40,000 per year. (*Id.*, at p. 4.)  Nonwhites are 83% more likely to pay an overdraft fee than whites. (*Id.*, at p. 3.)

11.      In reaction to banks and credit unions taking advantage of millions of customers through the unfair practice of charging overdraft fees through methodologies that maximize the possible number of expensive overdraft fees to be charged, a substantial amount of litigation on these issues has occurred over the past few years.  The results of this litigation include a trial verdict in California and nationwide settlements wherein banks and credit unions have been

---

[1] http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf

CLASS ACTION: COMPLAINT

ordered or have agreed to pay unfairly assessed overdraft fees back to their customers in an amount in the hundreds of millions of dollars.

12.     Furthermore, the federal government has also stepped in to provide additional protections to customers with respect to abusive overdraft policies.  In 2010, the Federal Reserve Board enacted regulation permitting financial institutions to charge overdraft fees on ATM and one-time debit card charges only if the institution first obtained the affirmative consent of the customer. 12 C.F.R. § 1005.17 ("Opt In Rule").

13.     To qualify as affirmative consent, the opt-in notice/agreement must include, but is not limited to the following:

- The customer must be provided the overdraft policy, including the dollar amount of any fees that will be charged for an overdraft;

- The opt-in consent must be obtained separately from other consents and acknowledgements;

- The consent cannot serve any purpose other than opting into the overdraft program;

- The consent cannot be a pre-selected checked box;

- The financial institution may not provide different terms for the account depending on whether the customer opted in to the overdraft program.

If the financial institution does not obtain proper affirmative consent from the consumer that meets all of the requirements of the Opt-in Rule, then it is not allowed to charge overdraft fees on ATM and one-time debit card transactions.

14.     At all relevant times, NFCU has had an overdraft program (sometimes referred to as "Courtesy Pay" or "Account Guardian" for debit card transactions) in place for assessing overdraft

fees on certain transactions which is contrary to the express terms of its contracts with members; is contrary to how NFCU represents its overdraft program to its members; and is contrary to what consumers would expect as to when they would be assessed overdraft fees.  NFCU contracts with its members that it is entitled to assess an overdraft fee when NFCU pays an item (an item is a check, debit card withdrawal, ATM or ACH) when it is presented without sufficient funds to pay the item.  (*See* Exhibit 1, p. 11, "Orders" section of Member Services Agreement ("Account Agreement") attached hereto.)  In another contract with its members, it defines an overdraft as when there is not enough money in the account to cover the transaction.  (*See* Exhibit 2, "Account Guardian Opt-In" ("Opt-In Agreement") attached hereto.)

15.     NFCU's contractual promises in the Account Agreement and Opt-In Agreement to only assess overdraft fees when there is not enough money/sufficient funds in the account to pay the item , was also provided to customers in other disclosures and marketing materials it provided to customers.

16.     However, contrary to the Account Agreement, Opt-In Agreement and other marketing materials indicating that NFCU will only charge overdraft fees when there is not enough money in the checking account to pay the transaction, NFCUs practice when assessing an overdraft fee on a transaction is to ignore whether there is money in the account or a negative balance, and instead make the automated decision on assessing overdraft fees based on an artificial internal calculation (available balance) rather than the actual balance.   The available balance is the actual balance minus anticipated debits in the future (that may or may not occur) and deposits that have not yet cleared pursuant to its funds availability policy.  The use of an internal available balance rather than the money in the account to determine whether a transaction results in an overdraft and is subject to an overdraft fee is directly contrary to the language in the contracts.  The result is that

NFCU improperly charges members overdraft fees in situations when there is money in the account to pay the item(s).

17.     This practice is in breach of both NFCU's Account Agreement and Opt-In Agreement.  Further, charging overdraft fees even when there is sufficient money/funds in the account is inconsistent with how NFCU describes the circumstances of when it assesses overdraft fees in other customer materials.   Further, NFCU has failed to inform customers of the conditions under which overdraft fees will be assessed in both the Account Agreement and other consumer materials.

18.     Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contracts.

19.     Therefore, Plaintiff, on behalf of herself and all others similarly situated, seeks relief as set forth below.

**B.     Unlawful Overdraft Fees Assessed to Plaintiff Mary Chambers**

20.     Plaintiff was harmed by the practice of charging overdraft fees when there was money in the account to cover the transaction.  Plaintiff entered into agreements, and opted-in the overdraft program with NFCU, wherein NFCU contracted to charge overdraft fees only if there was not money to cover the transaction.  NFCU breached these agreements, and in breaching the Opt-In Agreement, violated Regulation E.  It will be necessary to obtain Defendant's records to determine each occasion when NFCU engaged in this practice, and the resulting damage to Plaintiff from the practice.  However, to give just one example, on March 20, 2015, Plaintiff had a balance of $67.74 in her account, when a debit card transaction of $59.99 was posted leaving her with a balance of $7.75.  Despite have sufficient funds and money in her account to cover and pay

the $59.99 transaction, Plaintiff was charged a $32.00 overdraft fee for the transaction despite having money in her account to cover the transaction.  It is believed that a complete review of Plaintiff's and NFCU's records will show multiple instances of NFCU improperly charging Plaintiff overdraft fees for transaction items despite Plaintiff having sufficient funds and money in her account to cover the transaction item(s).

21.     Furthermore, the assessment and unilateral taking of improper overdraft fees, further reduces the balance and amount of funds in the account, resulting in and aggressively causing subsequent, otherwise non-overdrafting transactions to be improperly treated as transactions for which NFCU assesses further overdraft fees.  A complete evaluation of NFCU's records is necessary to determine the full extent of Plaintiff's harm from this practice.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this case, and each of her respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b) (3) on behalf of the following classes.

23.     The "Class" is composed of two potential classes.

**The Positive Balance Class:**

**All US residents who have or have had accounts with NFCU who incurred overdraft fees for ATM and non-recurring debt card transactions when there was money in the checking account to cover the transactions in the three years preceding the filing of this Complaint.**

**The Regulation E Class:**

**All US residents who have or have had accounts with NFCU who were opted into the overdraft program for ATM and non-recurring debit card transactions through the**

CLASS ACTION: COMPLAINT

**use of the opt-in agreement which provided inaccurate or misleading information on NFCU's overdraft program in violation of Regulation E, and were assessed overdraft charges resulting from ATM and/or non-recurring debit card transaction in the year preceding the filing of this Complaint.**

24. Excluded from the above Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant, this Court and any employees assigned to work on the case, and all employees of the law firms representing Plaintiff and the Class.

25. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

26. This action has been brought and may be properly maintained on behalf of each of the Class proposed herein under Federal Rule of Civil Procedure 23.

27. **Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))** – The members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of the members of the Class is unknown to Plaintiff at this time and can be determined only by appropriate discovery, Plaintiff believes that the Class is likely to include thousands of members.

28. Upon information and belief, Defendant retains the databases, or other documentation, of transactions and account enrollment which will be analyzed by an expert to ascertain all members of the Class who have been harmed by the practice. Further, the Class definition identifies groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description. Other than by direct notice by mail or email, alternatively proper

CLASS ACTION: COMPLAINT

and sufficient notice of this action may be provided to the Class members through notice published in newspapers or other publications.

29.   **Commonality (Federal Rule of Civil Procedure 23(a)(2)** – The action involves common questions of law and fact.  Those common questions of law or fact predominate over questions that may affect only individual Class members.  The questions of law and fact common to Plaintiff and the Class members include, among others, the following:

    a.   Whether Defendant had standardized Account Agreements during the class period that were provided to customers;

    b.   Whether Defendant had standardized Opt-In Agreements during the class period that was provided to customers;

    c.   Whether Defendant breached the customer agreements by use of an automated system of assessing overdraft fees for transactions when customers' checking accounts had sufficient funds/money to cover the transactions;

    d.   Whether Defendant's conduct violated state consumer protection laws;

    e.   Whether Defendant's conduct violated 12 C.F.R. § 1005.17.

30.   **Typicality (Federal Rule of Civil Procedure (23(a)(3))** – Plaintiff's claims are typical of all of the members of the Class.  The evidence and the legal theories regarding Defendant's alleged wrongful conduct are substantially the same for Plaintiff and all of the Class members, as the relevant agreement and the challenged overdraft fee practice that was applied to customers' accounts are uniform for all Class members.

31.   **Adequacy (Federal Rule of Civil Procedure (23(a)(4))** – Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection.  There are no material conflicts

between the claims of the representative Plaintiff and the members of the Class that would make

class certification inappropriate. Plaintiff and her counsel intend to prosecute this action

vigorously.

32. **Predominance and Superiority (Federal Rule of Civil Procedure 23(b)(3))** –
The common questions of law or fact identified herein and to be identified through discovery

predominate over questions that may affect only individual Class members. Further, the class

action is superior to all other available methods for the fair and efficient adjudication of this case

or controversy. Because the injury suffered by the individual Class members may be relatively

small, the expense and burden of individual litigation make it virtually impossible for Plaintiff and

Class members individually to seek redress for the alleged wrongful conduct. Even if any

individual persons or group(s) of Class members could afford individual litigation, it would be

unduly burdensome to the courts in which the individual litigation(s) would proceed. The class

action device is preferable to individual litigation(s) because it provides the benefits of unitary

adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast,

the prosecution of separate actions by individual Class members would create a risk of inconsistent

or varying adjudications with respect to individual Class members that would establish

incompatible standards of conduct for the party (or parties) opposing the Class and would lead to

repetitious trials of the numerous common questions of fact and law. Plaintiff knows of no

difficulty that will be encountered in the management of this litigation that would preclude its

maintenance as a class action. As a result, a class action is superior to other available methods for

the fair and efficient adjudication of this controversy. Absent a class action, Plaintiff and the Class

members will continue to suffer losses, thereby allowing these violations of law to proceed without

remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

33.     Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action.  Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices.  To the extent that any further notices may be required, Plaintiff would contemplate the use of additional media and/or mailings.

34.     This action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

a.   Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

i.     Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

ii.     Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b.   The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

c.   Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

i.      The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

ii.     The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

iii.    The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

iv.     The difficulties likely to be encountered in the management of a Class Action.

## FIRST CAUSE OF ACTION

### (For Breach of Contract)

35.     The preceding allegation are incorporated by reference and realleged as if fully set forth herein.

36.     Plaintiff and each of the Class members entered into contracts covering the subject of overdraft transactions, which was drafted by and is binding on Defendant.  In addition, certain of the Class members entered into an Opt-In Agreement with Defendant.

37.     The contracts authorize Defendant to assess overdraft fees only for transactions for which there was not money/sufficient funds in the account to pay the item.

38.     In addition, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit

of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

39.     The material terms of the contracts also included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contract.

40.     Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contracts, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

41.     Defendant breached the expressed terms of the contracts by, inter alia, assessing overdraft fees when there was money in the account to pay the item.

42.     Alternatively, Defendant breached the implied covenant of good faith and fair dealing based on this practice.

43.     As a proximate result of Defendant's breach of the contract, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## SECOND CAUSE OF ACTION

### (For Violation of Maryland Consumer Protection Act RCW Md. Code Ann. Comm. Law §13-301 *et seq.*)

44.     The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

45.     Plaintiff and the members of the Class are consumers as defined by § 13-101(c) of

the MCPA and have standing to bring this claim under § 13-408(a) of the MCPA.

46.     Defendant SECU is a person as defined by § 13-101(h) of the MCPA.

47.     The conduct of SECU in representing that overdraft fees would not be charged when there is enough money in the account to cover the transaction, then charging overdraft fees in that circumstance, constitutes and unfair or deceptive trade practice, prohibited by §§ 13-101 and 13-303 of the MCPA.  Defendant SECU's unfair and deceptive trade practices caused Plaintiff and the Class members harm, and thereby entitle them to bring this action for damages and reasonable attorney fees and costs pursuant to § 13-408(b) of the MCPA, as wells as restitution and equitable relief pursuant to § 13-406.

## THIRD CAUSE OF ACTION

### (For Unjust Enrichment/Restitution)

48.     The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

49.     Defendant received millions of dollars as a result of the wrongful and unjust misconduct alleged above.

50.     As a result, Plaintiff and the Class members have conferred a benefit on Defendant. Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred.  Defendant will be unjustly enriched should it be allowed to retain such funds. Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

## FOURTH CAUSE OF ACTION

### (For Money Had and Received)

51.     The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

CLASS ACTION: COMPLAINT

52.     Defendant has obtained money from Plaintiff and the Class members by the

exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or

fact.

53.     As a result, Defendant has in its possession money which in equity belongs to

Plaintiff and the Class members which should be refunded to Plaintiff and the Class members.

Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

## FIFTH CAUSE OF ACTION

### (Negligence)

54.     The preceding allegations are incorporated by reference and realleged as if fully set

forth herein.

55.     As a general rule, persons have a duty to use due care to avoid injury to others, and

may be held liable if their careless conduct injures another person.  Defendant had and continues to

have a duty to maintain and preserve its customers' checking accounts and to prevent their

diminishment though its own wrongful acts.  Specifically, Defendant owed a duty of care to

Plaintiff and the Class members to not charge overdraft fees for transactions for which there were

sufficient funds/money in the account.

56.     Defendant breached this duty by unreasonably mishandling the accounts of Plaintiff

and the Class members by taking funds from Plaintiff and the Class members by assessing

overdraft fees for transactions when fees should not have been charged.

57.     As a proximate result of Defendant's negligence, Plaintiff and each class member

has been damaged in an amount to be proven at trial.  Therefore, Plaintiff and the Class members

seek relief as set forth in the Prayer below.

## SIXTH CAUSE OF ACTION

### (Violation of Electronic Funds Transfer Act)

58.     The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

59.     Because of Defendant's misrepresentations and material omissions as to the operation of the overdraft program, any consent that Defendant obtained for class members participation in the program was fraudulently induced.

60.     Because consent to participation was fraudulently induced, Defendant failed to comply with 12 C.F.R. § 1005.17 which requires affirmative consent.

61.     Because of Defendant's failure to comply with 12 C.F.R. § 1005.7 it is liable for actual and statutory damages, as well as attorney fees and costs of suit pursuant to 12 U.S.C. § 1693m.

## PRAYER

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1.     For an order certifying this action as a class action;

2.     For compensatory damages on all applicable claims and in an amount to be proven at trial;

3.     For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

4.     For an order enjoining the wrongful conduct alleged herein, including ceasing to charge overdraft fees for transactions for which there are sufficient funds/ money in the account, and providing accurate and reliable information regarding the overdraft practice;

5.     For costs;

CLASS ACTION: COMPLAINT

6.    For interest;

7.    For attorneys' fees under the Maryland Consumer Protection Act, the common fund doctrine, the Electronic Funds Transfer Act, other applicable law, and the customer account agreement.

8.    For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class members demand a trial by jury on all issues so triable.

DATED:  November _____, 2015.

BY:  _/s/ Steven W. Teppler_
     Steven W. Teppler, DC Bar #445259
     steppler@abbottlawpa.com
     **ABBOTT LAW GROUP, P.A.**
     2929 Plummer Cove Road
     Jacksonville, FL 32223
     Telephone:  (904) 292-1111
     Facsimile:  (904) 292-1220

     Richard D. McCune, CA State Bar #132124*
     rdm@mccunewright.com
     **MCCUNEWRIGHT LLP**
     2068 Orange Tree Lane, Suite 216
     Redlands, California  92374
     Telephone:  (909) 557-1250
     Facsimile:  (909) 557-1275

     Taras Kick, CA State Bar #143379*
     taras@kicklawfirm.com
     **THE KICK LAW FIRM, APC**
     201 Wilshire Boulevard
     Santa Monica, California  90401
     Telephone:   (310) 395-2988
     Facsimile: (310) 395-2088

     *_Pro Hac Vice_ applications to be submitted

     _Attorneys for Plaintiff Mary Chambers_
     _and the Putative Class_

CLASS ACTION: COMPLAINT